UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
DEENA INDIVIGLIO, individually and on             :
behalf of all others similarly situated,          :
                Plaintiff,                    :
                                                     :         **OPINION AND ORDER**
v.                                                :
                                                     :         22 CV 9545 (VB)
B&G FOODS, INC.,                                  :
                Defendant.                   :
--------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Deena Indiviglio brings this putative class action against defendant B&G Foods, Inc. ("B&G"), alleging a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. ("MMWA"); violations of Sections 349 and 350 of New York's General Business Law ("GBL"); violations of the consumer fraud acts of Alaska, Arkansas, Idaho, Iowa, Mississippi, North Carolina, North Dakota, Texas, Utah, Virginia, and Wyoming; breach of express warranty; breach of the implied warranty of merchantability/fitness for a particular purpose; and unjust enrichment. Plaintiff's claims are all based on the assertion that the phrase "All Fruit" on the packaging of B&G's Polaner-brand spreadable fruit is false and misleading.

       Now pending is defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. #8).

       For the reasons set forth below, the motion is GRANTED.

       The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(d)(2).

## BACKGROUND

For the purpose of ruling on the motion, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

Defendant B&G "manufactures, markets, and sells" spreads, jams, preserves, marmalades, and jellies under its Polaner brand.  (Doc. #1 ("Compl.") ¶¶ 1, 27).  At issue in this case are statements on the packaging of Polaner's "All Fruit spreadable fruit" (the "Product").  The Product, which comes in a variety of flavors, displays on its front label the fruit contained in the spread and the words "All Fruit," "Spreadable Fruit," and "Sweetened <u>Only</u> with Fruit Juice," as depicted below:



(Compl. ¶ 2).

As alleged in the complaint, the back label lists the Product's ingredients, which include a particular fruit, juice concentrates, fruit pectin, citric acid, and natural flavor. (Compl. ¶ 6). An image of the ingredient list for the cherry-flavored Product is shown below:

**INGREDIENTS:** JUICE CONCENTRATES (PEAR, GRAPE, PINEAPPLE), CHERRIES, FRUIT PECTIN, CITRIC ACID, NATURAL FLAVOR.

(Compl. ¶ 6).

Plaintiff alleges the description "All Fruit" is false and misleading because neither citric acid nor natural flavor "can reasonably be described as fruit." (Compl. ¶ 7). Plaintiff asserts the statement "Sweetened Only with Fruit Juice" furthers the false impression the Product contains only fruit ingredients. (Id. ¶ 13). Moreover, competitors allegedly sell products containing "all fruit ingredients," so plaintiff contends consumers reasonably expect it is "technologically and economically feasible" to sell fruit products without any non-fruit ingredients. (Id. ¶ 12).

Plaintiff purchased the Product "in 2021 and/or 2022" at stores including a Shoprite location in New Rochelle, New York. (Compl. ¶ 30). Plaintiff alleges she purchased the Product in part because statements on its packaging led her to believe the Product contained "only fruit ingredients." (Id. ¶ 31). Plaintiff asserts "[c]onsumers value fruit ingredients because these are generally less processed, more natural, and healthier than non-fruit ingredients." (Id. ¶ 14). She contends that she and other similarly situated consumers would not have paid the retail price — $3.99 for a ten ounce jar—had they known the "representations and omissions" on the Product's packaging were false and misleading. (Id. ¶ 16).

## DISCUSSION

I. Standard of Review

A. Rule 12(b)(1)

A district court must dismiss an action pursuant to Rule 12(b)(1) "for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it." Conn. Parents Union v. Russell-Tucker, 8 F.4th 167, 172 (2d Cir. 2021).[1]

When deciding a Rule 12(b)(1) motion at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor," except for "argumentative inferences favorable to the party asserting jurisdiction." Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order). To the extent a Rule 12(b)(1) motion places jurisdictional facts in dispute, the district court must resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings. Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).

In addition, when a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, a court should consider the Rule 12(b)(1) challenge first. Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990)

B. Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678;

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.   GBL Claims

Defendant argues plaintiff has not sufficiently pleaded the Product's packaging is false or materially misleading because she has not alleged the Product actually contains non-fruit ingredients.

The Court agrees.

A.   Legal Standard

GBL Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," and Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law §§ 349(a), 350.  To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015).

"[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." Fink v. Time Warner Cable, 714 F.3d 739, 742 (2d Cir. 2013) (per curiam). "For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." Id. In other words, courts assess "each allegedly misleading statement in light of its context on the product label or advertisement as a whole," contemplating "[t]he entire mosaic . . . rather than each tile separately." Belfiore v. Procter & Gamble Co., 311 F.R.D. 29, 53 (E.D.N.Y. 2015).

Moreover, plaintiff "must do more than plausibly allege that a label might conceivably be misunderstood by some few customers." Twohig v. Shop-Rite Supermarket, Inc., 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021). Rather, she must assert "that a significant portion" of consumers, "acting reasonably in the circumstances, could be misled." Id.

Whether an advertisement is misleading to a reasonable consumer is generally a question of fact. See Lugones v. Pete & Gerry's Organic, LLC, 440 F. Supp. 3d 226, 242 (S.D.N.Y. 2020). However, it is well settled a court may, in certain cases, determine advertising is not materially misleading as a matter of law. Fink v. Time Warner Cable, 714 F.3d at 741 (citing Oswego Laborers' Local 213 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995)).

B.   Analysis

Plaintiff's GBL claims must be dismissed because she has not adequately alleged the Product's packaging contains any materially false or misleading statement.

Plaintiff defines "fruit" as "the seed-associated fleshy structures or produce of plants that are sweet or sour and edible in the raw state." (Compl. ¶ 3). Nonetheless, the appearance, description, and physical packaging of the Product patently reveals it does not contain solely

whole, unaltered fruit in its natural state. No reasonable consumer would open a jar of the cherry-flavored Product and sincerely expect to find it full of raw cherries. See Weinstein v. eBay, Inc., 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) (the reasonable consumer is not "the least sophisticated consumer" or one that lacks common sense). Indeed, plaintiff concedes "[f]ruits can be processed to make other products like spreads, jams and preserves." (Compl. ¶ 4). Thus, the phrase "All Fruit spreadable fruit" tells a reasonable consumer the Product "will consist only of fruit ingredients," as modified and processed to make the fruit spreadable. (Id. ¶ 6). In other words, "as long as the Product contains only fruit products in a form that can be distributed over an area or applied on a surface, the label would not be inherently misleading or confusing to a reasonable consumer." Vitort v. Kroger Co., 2021 WL 6061864, at *2 (D. Or. Sept. 13, 2021), aff'd, 2023 WL 3143690 (9th Cir. Apr. 28, 2023).

The crux of plaintiff's argument is that neither citric acid nor natural flavor can reasonably be considered fruit ingredients because both may be derived from sources other than fruit. As discussed below, this is unavailing.

1. Citric Acid

Plaintiff alleges "[c]itric acid is an organic acid in a variety of fruits, especially citrus." (Compl. ¶ 8). Thus, under plaintiff's own definition, citric acid is a fruit product. This is consistent with plaintiff's allegations that fruit pectin and juice concentrates—also fruit derivatives—"can reasonably be described as fruit." (Id. ¶ 7).

Nonetheless, plaintiff alleges that when "industry" uses citric acid as an ingredient in other foods, the acid is not derived from fruit but rather "industrially produced by fermentation from the fungus Aspergillus niger." (Compl. ¶¶ 9–10).

This generalized statement about "industry" is not enough to adequately allege the citric acid <u>used in the Product</u> is industrially produced and not derived from fruit. See <u>Wynn v. Topco Assocs.</u>, 2021 WL 168541, at *6 (S.D.N.Y. Jan. 19, 2021). "To satisfy the pleading standards," plaintiff must "draw a connection between the common industry practice and the actual practice used by [defendant]." <u>Tarzian v. Kraft Heinz Foods Co.</u>, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019). In contrast to other cases involving similar claims, plaintiff offers no supporting factual allegations about the source or preparation of citric acid as an ingredient in the product at issue. <u>See, e.g.</u>, <u>Bardsley v. Nonni's Foods LLC</u>, 2022 WL 814034, at *1, *7 (S.D.N.Y. Mar. 16, 2022) (denying motion to dismiss where plaintiff alleged laboratory testing revealed the source of the natural flavor defendant used). Here, even assuming the truth of her allegations, plaintiff has not asserted defendant uses synthetic—rather than fruit-based—citric acid in the Product. See <u>Vitort v. Kroger Co.</u>, 2021 WL 6061864, at *6 (finding no material misrepresentation because plaintiff's "claims are based on an assumption the added sugars in the Product do not derive from fruit sources"). Therefore, plaintiff has not adequately alleged that the presence of citric acid renders the phrase "All Fruit" false or misleading.

      2.    <u>Natural Flavor</u>

Plaintiff also has not adequately alleged it is misleading to market the Product as "All Fruit" because it contains natural flavor.

Plaintiff defines natural flavor as "the essential oil, oleoresin, essence or extractive which contains flavoring constituents derived from spices, fruits or vegetables, edible yeast, or plant material." (Compl. ¶ 11). Thus, as with citric acid, inherent in plaintiff's definition of natural flavor is the fact that it may be derived from fruit (among other sources).

But plaintiff makes no allegations whatsoever about the type or source of natural flavor actually used in the Product.  As such, plaintiff's assertion that the Product contains non-fruit ingredients because it is made with natural flavor is quintessentially conclusory.  Compare Hoffman v. Kraft Heinz Foods Co., 2023 WL 1824795, at *8 (S.D.N.Y. Feb. 7, 2023) ("Plaintiff plainly offers conclusory allegations about the possibility that the Product contains artificial DL-Malic acid," rather than natural L-Malic acid, "without any additional factual support."), with Mason v. Reed's Inc., 515 F. Supp. 3d 135, 145–46 (S.D.N.Y. 2021) (finding allegations adequate because plaintiff "alleges in some detail that citric acid . . . acts as a preservative in the defendant's products" (emphasis added)).

In sum, because plaintiff has not adequately alleged the Product contains non-fruit ingredients, she cannot claim the statement "All Fruit" is false or misleading.

Accordingly, plaintiff's GBL claims must be dismissed.

III.    Other States' Consumer Protection Statutes Claims

Plaintiff also purports to represent a "Consumer Fraud Multi-State Class" with members in Alaska, Arkansas, Idaho, Iowa, Mississippi, North Carolina, North Dakota, Texas, Utah, Virginia, and Wyoming.  Plaintiff alleges defendant's conduct violates the consumer protection acts of each of those states.  See Alaska Stat. Ann. § 45.50.471; Ark. Code Ann. § 4-88-107; Idaho Code Ann. § 48-603; Iowa Code Ann. § 714H.3; Miss. Code. Ann. § 75-24-5; N.C. Gen. Stat. Ann. § 75-1.1; N.D. Cent. Code Ann. § 51-15-02; Tex. Bus. & Com. § 17.46(a); Utah Code Ann. § 13-11-4(1); Va. Code Ann. § 59.1-200; Wyo. Stat. Ann. § 40-12-105 (collectively, the "Other Consumer Protection Statutes").

9

The parties agree each of the Other Consumer Protection Statutes is substantively similar to GBL Sections 349 and 350 and requires a false, misleading, or deceptive representation. (Compl. ¶¶ 38, 47; Doc. #9 at 7).

As discussed above, plaintiff has not adequately alleged the Product's packaging contains a material misrepresentation. Accordingly, plaintiff's claims alleging violations of the Other Consumer Protection Statutes must be dismissed.

IV.     Breach of Express Warranty Claim

Defendant argues plaintiff's claim for breach of express warranty must be dismissed for failure to allege she provided sufficient pre-suit notice.

The Court agrees.

"In order to assert a breach of express warranty claim under New York law, a buyer must provide the seller with timely notice of the alleged breach of warranty." Campbell v. Whole Foods Mkt. Grp., 516 F. Supp. 3d 370, 391 (S.D.N.Y. 2021); N.Y. U.C.C. § 2-607(3)(a).

Here, plaintiff alleges she "provided or provides notice to Defendant, its agents, representatives, retailers, and their employees," and "Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums." (Compl. ¶¶ 59–60). "It is well settled that such allegations are insufficient to indicate proper notice, or to avoid dismissal." Devey v. Big Lots, Inc., 2022 WL 6827447, at *6 (W.D.N.Y. Oct. 12, 2022) (collecting cases dismissing breach of express warranty claims with identical pleading of notice); see Campbell v. Whole Foods Mkt. Grp., Inc., 516 F. Supp. 3d at 391 ("If Plaintiff had provided notice, she could have written that, rather than pleading, in essence, both that she did provide notice, and that she did not do so but will do so in the future.").

Plaintiff's argument that the pre-suit notice requirement has "long been jettisoned" in cases involving retail sales is similarly unavailing. (Doc. #14 at 9 (quoting Gavilanes v. Gerber Prods. Co., 2021 WL 5052896, at *7 (E.D.N.Y. Nov. 1, 2021))). The line of cases upon which plaintiff relies is based on a limited exception which waives the pre-suit notice requirement in cases involving "physical or personal injury as a result of Defendant's alleged breach," neither of which is claimed here. Budhani v. Monster Energy Co., 527 F. Supp. 3d 667, 685 (S.D.N.Y. 2021); see Fischer v. Mead Johnson Lab'ys, 41 A.D.2d 737, 737–38 (2d Dep't 1973). Thus, courts in this district still largely require proper pre-suit notice for express warranty claims. See Wheeler v. Topps Co., Inc., 652 F. Supp. 3d 426, 433–34 (S.D.N.Y. 2023) (collecting cases).

Lastly, plaintiff's assertion that the complaint itself constitutes notice of an alleged breach of warranty is incorrect. Courts in this Circuit have consistently recognized "the filing of the complaint cannot possibly serve as 'pre-suit' notice, because the filing of the complaint does not precede the lawsuit; it is the commencement of the lawsuit." Miramontes v. Ralph Lauren Corp., 2023 WL 3293424, at *9 (S.D.N.Y. May 5, 2023) (collecting cases).

Accordingly, plaintiff's breach of express warranty claim must be dismissed.

V.      Breach of Implied Warranty of Merchantability/Fitness for a Particular Purpose Claims

Defendant argues plaintiff's breach of implied warranty claims must be dismissed because plaintiff was not in privity with defendant.

The Court agrees.

"New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of the implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic." Catalano v. BMW of N. Am., LLC, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016) (citing Arthur Jaffee Assocs. v. Bilsco Auto. Serv.,

11

Inc., 58 N.Y.2d 993, 995 (1983)).  A remote purchaser, such as a retail purchaser, is not in privity with the manufacturer of the goods.  See Weisblum v. Prophase Labs, Inc., 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015).

Plaintiff alleges only economic loss, not personal injury, and she did not purchase the product directly from defendant.  Thus, plaintiff has not satisfied the privity requirement.

Accordingly, plaintiff's breach of implied warranty claims must be dismissed.

VI.   MMWA Claim

Defendant argues plaintiff's MMWA claim must be dismissed because plaintiff did not allege the Product contained a written warranty.

The Court dismisses the claim but for a different reason.

Because plaintiff's warranty claims are dismissed, the MMWA claims must also be dismissed.  Although the MMWA is a federal statute, liability is based on state warranty laws.  See Ebin v. Kangadis Food Inc., 2013 WL 3936193, at *3 n.2 (S.D.N.Y. July 26, 2013) (noting the MMWA "incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages").  Thus, plaintiff's claim under the MMWA "stand[s] or fall[s]" with her state-law warranty claims.  See Brady v. Basic Rsch., L.L.C., 101 F. Supp. 3d 217, 234 (E.D.N.Y. 2015).

Because plaintiff has not stated a claim for breach of warranty under state law, her MMWA claim must also be dismissed.

VII.   Unjust Enrichment Claim

Defendant argues plaintiff cannot, as a matter of law, plead a claim for unjust enrichment because it is duplicative of plaintiff's other claims.

The Court agrees.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." In re Mid-Island Hosp., Inc., 276 F.3d 123, 129 (2d Cir. 2002). An unjust enrichment claim may proceed "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012). "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Id.

Here, plaintiff's unjust enrichment claim is duplicative of her other claims. In support of her unjust enrichment claim, plaintiff alleges only that "Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members." (Compl. ¶ 64). In other words, plaintiff alleges defendant "committed actionable wrongs" by placing misleading representations on the Product's packaging, and defendant was therefore enriched at plaintiff's expense. See Corsello v. Verizon N.Y., Inc., 18 N.Y.3d at 791. This same factual allegation underlies plaintiff's statutory, contract, and tort law claims.

Moreover, contrary to plaintiff's contentions, she may not plead unjust enrichment "in the [a]lternative." (Doc. #14 ("Pl. Opp.") at 12). "A claim is alternative and not duplicative if a plaintiff may fail on one but still prevail on the other." In re Skat Tax Refund Scheme Litig., 356 F. Supp. 3d 300, 325 (S.D.N.Y. 2019). Here, if plaintiff cannot show the Product contained a materially misleading representation, all of her claims fail, including her claim for unjust enrichment. For this reason, "courts in the Second Circuit have consistently held that unjust

13

enrichment claims are duplicative of GBL claims" in similar cases.  Beers v. Mars Wrigley Confectionery US, LLC, 2022 WL 493555, at *7 (S.D.N.Y. Feb. 17, 2022).

Accordingly, plaintiff's unjust enrichment claim must be dismissed.

VIII.   Common-Law Fraud Claim

Defendant argues that to the extent plaintiff attempts to allege an additional claim for common-law fraud, it must be dismissed because (i) it was not pleaded in the complaint, and (ii) she has failed to allege a material misrepresentation as required to state a claim for fraud.

The Court agrees.

It is well-settled a plaintiff may not "assert[] new facts or theories for the first time in opposition to" a motion to dismiss.  K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013).  This is precisely what plaintiff has done here.  The complaint is completely devoid of any mention of common-law fraud, and plaintiff's two-paragraph attempt to assert this new claim at the end of her opposition fails.  (See Pl. Opp. at 12).

In any event, a claim for fraud under New York law requires a showing of "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."  Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996).  In other words, to state a fraud claim, a plaintiff must allege "a representation of material fact, falsity, scienter, reliance and injury."  Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 57 (1999).  As discussed above, plaintiff has failed to allege the Product's packaging contains any material misrepresentation, so she cannot state a claim for common-law fraud.  See Russett v. Kellogg Sales Co., 2022 WL 2789837, at *4 (S.D.N.Y. July 15, 2022) (collecting cases) ("Since Plaintiff has not pleaded an underlying

14

materially misleading representation, the other claims in this case, which hinge on the core theory of an alleged deceptive or misleading label on the Product, must also be dismissed.").

Accordingly, even if the Court were to construe plaintiff's opposition to raise a common-law fraud claim, it would have to be dismissed.

IX.     Leave to Amend

In the last line of her opposition, without any elaboration, plaintiff requests leave to file an amended complaint should the Court grant defendant's motion to dismiss. (Pl.'s Opp. at 12).

Although leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), requests for leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); see TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014) (leave to amend may be denied when the plaintiff "fails to specify . . . how amendment would cure the pleading deficiencies in its complaint").

By Order dated March 21, 2023, the Court instructed plaintiff to notify the Court whether she intended to file an amended complaint in response to defendant's motion to dismiss and stated that if plaintiff elected not to file an amended complaint, the Court would be unlikely to grant plaintiff a further opportunity to amend to address the purported deficiencies made apparent by the fully briefed arguments in defendant's motion. (Doc. #11). By letter dated March 30, 2023, plaintiff's counsel informed the Court that, "in accordance with the Order of March 21, 2023, Plaintiff intends to rely on the complaint and will file opposition to the motion on or before April 3, 202[3]." (Doc. #12).

15

Thus, plaintiff elected not to file an amended complaint in response to defendant's motion to dismiss. Further, plaintiff has not submitted a proposed amended complaint, identified any basis for amendment, specified how an amendment would cure the complaint's pleading deficiencies, or set forth any additional facts she intends to allege.

Accordingly, leave to amend is denied.

## CONCLUSION

The motion to dismiss is GRANTED.

Plaintiff's request for leave to amend is DENIED.

The Clerk is instructed to terminate the pending motion (Doc. #8) and close this case.

Dated: December 29, 2023
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge